**In re Jane DOE 10.**

No. 02–0376.

Supreme Court of Texas.

April 29, 2002.

**339**

Susan Hays, Akin, Gump, Strauss, Hauer & Field, L.L.P., Dallas, for Jane Doe 10.

Justice RODRIGUEZ delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice OWEN, Justice BAKER, Justice HANKINSON, Justice O'NEILL and Justice JEFFERSON joined.

Jane Doe is a pregnant, unemancipated[1] minor who wishes to have an abortion. Under the Texas Family Code, a physician may not perform an abortion on an unemancipated minor unless the physician gives forty-eight hours notice to one of her parents, her managing conservator, or her guardian. *See* TEX. FAM.CODE § 33.002(a) (Supp.2002). However, section 33.003 of the Family Code allows a pregnant minor who wishes to have an abortion without notifying one of her parents, her managing conservator, or her guardian to file an application for a court order authorizing the performance of an abortion without notification. *See id.* § 33.003(a) (Supp. 2002). There are three bases on which a trial court may grant the minor's application: (1) if the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification; (2) if notification would not be in the best interest of the minor; or (3) if notification may lead to physical, sexual, or emotional abuse of the minor. *See id.* § 33.003(i) (Supp.2002). Doe's application to the trial court asserted that all three grounds were present.

Doe was represented by an attorney, and the trial court also appointed a guardian ad litem. *See id.* § 33.003(e) (Supp.

1. "Unemancipated minor" includes a minor who is unmarried and has not had the disabilities of minority removed under Chapter 31 of the Texas Family Code. TEX. FAM.CODE § 33.001(5) (Supp.2002).

2002). At the hearing, Doe testified and was questioned both by her attorney and by the trial court. The trial court asked only perfunctory questions. Doe's guardian ad litem asked no questions, but recommended that the court grant her application.

The trial court denied Doe's application. It indicated its decision on a form by placing the word "No" next to "The applicant is mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents, her managing conservator or guardian" and next to "Notifying either of the applicant's parents, managing conservator or guardian would not be in her best interest." The court left blank the space next to "Notifying either of the applicant's parents, managing conservator or guardian may lead to physical, sexual, or emotional abuse of the applicant." The trial court then placed a check mark next to "The application is denied." Although the form provides lined space under each ground for the court to write findings of fact supporting its decision, the trial court wrote nothing in that space.[2] The trial court thus made no ruling and no findings of fact or conclusions of law on the third basis for a judicial bypass—whether notification may lead to physical, sexual, or emotional abuse of the minor. The court of appeals affirmed the trial court's judgment, with one justice dissenting.

Doe filed a confidential appeal to this Court, arguing that the trial court's ruling must be reversed and the application deemed granted because of the trial court's failure to comply with Chapter 33's requirement that the court "shall rule on an application submitted under [section 33.003] and shall issue written findings of fact and conclusions of law not later than 5 p.m. on the second business day after the date the application is filed with the court." TEX. FAM.CODE § 33.003(h) (Supp.2002). Doe argues that, because the trial court failed to comply with these mandatory requirements, Doe was denied a "timely and complete judgment" and the application is deemed to be granted. *See* TEX. FAM.CODE § 33.003(h) (Supp.2002); *In re Jane Doe 1(II)*, 19 S.W.3d 346, 357 (Tex.2000). We agree, and we reverse the court of appeals' judgment and render judgment granting the application.

## I.

The Legislature requires that the trial court "shall issue written findings of fact and conclusions of law." TEX. FAM. CODE § 33.003(h) (Supp.2002). If a minor alleges possible abuse, the trial court must determine whether, based on all the evidence presented at the hearing, a preponderance of the evidence supports a finding that notification may lead to abuse. *In re Jane Doe 2*, 19 S.W.3d 278, 283 (Tex.2000). In order to allow meaningful appellate review, "the trial court must make specific findings concerning the potential for abuse." *Id.* And, "if the trial court determines that the minor's testimony about potential abuse is not credible, it should also make specific findings in that regard." *Id.*

As noted, the Legislature has mandated that the trial court must both rule on an application *and* issue written findings of fact and conclusions of law not later than 5 p.m. on the second business

---

**2.** On the record, the trial court stated: "I don't think she demonstrates maturity, and it is the maturity point on the first ground that has to be met. And just a—it is discretionary enough here that I believe it would not be in her best interest not to tell." Oral comments from the bench are not written findings of fact. *See In the Interest of W.E.R.*, 669 S.W.2d 716, 716 (Tex.1984).

day after the date the application is filed with the court. TEX. FAM.CODE § 33.003(h) (Supp.2002). Moreover, the Legislature has expressly provided that "[i]f the court fails to rule on the application *and* issue written findings of fact and conclusions of law within the period specified . . ., the application is deemed to be granted." *Id.* (emphasis added). Under the statute's plain language, it is insufficient for the trial court to simply issue a ruling on the application—it must also issue written findings of fact and conclusions of law; otherwise, the application is deemed to be granted. Construing the statute, we held in *In re Jane Doe 1(II)* that "if the trial court holds a hearing and denies an application within the allotted time, but does not also issue written findings of fact and conclusions of law, the application is deemed granted, thereby implying findings contrary to the trial court's judgment." 19 S.W.3d at 357 (citing TEX. FAM.CODE § 33.003(h)). As we noted, it is contrary to the expedited nature of these proceedings to require a remand when the trial court fails to issue findings, and thus we held that "an omitted element should be deemed to have been found in the minor's favor if there is some evidence to support the finding." *Id.* Although in *Doe 1(II)* we addressed the latter holding specifically to the situation in which the trial court failed to make a finding on one of the two elements of the first statutory prong (mature and sufficiently well informed), we believe that the statute mandates the same result here because "a deemed finding on an omitted element against the minor would be contrary to the Legislature's intent in deeming an application granted if the trial court fails timely to make findings." *Id.* Because the trial court failed to issue findings of fact or conclusions of law on the question of whether notification may lead to physical, sexual, or emotional abuse of the minor, we must deem a finding in Doe's favor if there is some evidence in the record that notification may lead to any of these types of abuse.

## II.

At trial, Doe presented evidence concerning both possible physical and emotional abuse, but not sexual abuse. Doe's parents are divorced, and she lives with her mother. She testified that her father has a drinking problem and that he has hit her and her siblings. Specifically, she testified that he once beat her sister for wetting the bed, leaving bleeding bruises on her thighs, that he grabbed her sister by the throat and threw her into the back of the closet, and that he hit her other sister with his fist across her face, leaving blood on the wall. She also stated that her father has "violent tendencies" and "little things make him snap."

With regard to her mother, Doe testified that she had a conversation with her mother about the consequences of her becoming pregnant. She testified that the "conversation basically went, if I were to— if I was ever pregnant, I might as well not come home. I'd have no place to stay. I'd have no freedom, no liberties. My car would be taken away. My cell phone would be taken away. I wouldn't have all the luxuries that I do now." Later, when Doe was asked whether she felt certain that her mother would ask her to leave the house if she found out Doe was pregnant, Doe answered, "Yes. She probably wouldn't ask me to leave, she'd, like, tell me to leave, I'm pretty sure." In addition, Doe testified that she would have no financial support at that time. Doe testified that she was not employed and was completely financially dependent on her parents. We view this evidence in a light that tends to support the finding of possible abuse and disregard all evidence and inferences to the contrary. *See Bradford v.*

*Vento*, 48 S.W.3d 749, 754 (Tex.2001). Applying that standard, we must determine whether there is some evidence that notification may lead to Doe's physical or emotional abuse.[3]

Chapter 33 does not define "emotional abuse" or "physical abuse" and we have not defined these terms in our earlier opinions.[4] We need not define these terms today because we conclude that, under any definition of abuse, Doe has presented some evidence that notification may lead to her physical or emotional abuse. Some evidence exists if there is more than a scintilla of evidence that notification may lead to Doe's abuse. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 69 (Tex. 2000). Doe's testimony that her father had abused her and her sisters and that "little things set him off" is more than a scintilla of evidence that notifying her father may lead to Doe's physical abuse by him. Further, Doe testified that notifying her mother would cause her mother to banish her from her home. In *In re Jane Doe 4*, 19 S.W.3d 322 (Tex.2000), we held in the context of considering the minor's best interests prong that, as a matter of law, a minor's well-being would be "adversely affected if her parents withdrew support and severed all contact with her." *Id.* at 325. Consequently, there is at least some evidence that notifying her mother may lead to emotional abuse.

There was no evidence to controvert Doe's testimony on these issues, and the trial court made no findings of fact regarding Doe's credibility. Given the low evidentiary standard of "some evidence," we can only conclude that there is at least some evidence that, regardless of which parent she notifies, notification may lead to Doe's abuse, and thus the trial court's failure to issue findings of fact and conclusions of law requires us to deem the omitted element in Doe's favor. Therefore, under the Legislature's mandate in section 33.003(i), the application must be deemed to be granted on the ground of possible abuse. Accordingly, we reverse the court of appeals' judgment and render judgment granting Doe's application for a judicial bypass.

## III.

The trial court's failure to issue findings of fact or conclusions of law with regard to one of the bases asserted for a judicial bypass requires that the omitted basis be deemed to have been found in the minor's favor if there is some evidence to support the finding. This failure to issue fact findings does not comport with the Legislature's directive or with this Court's admonishments in *In re Jane Doe 1* and *In re Jane Doe 2*. Fact findings are necessary to demonstrate the trial court's careful consideration of each ground asserted for bypass, and particularized findings are essential to meaningful appellate review, at least when credibility or maturity concerns are involved. As we have said, "[T]he mere fact that the trial court has checked a box on a form does not demonstrate that it has given the careful consideration nec-

---

3. The possibility of emotional abuse may be based solely on a minor's testimony, and does not require testimony from a professional. *See In re Jane Doe 3*, 19 S.W.3d 300, 304 (Tex.2000) (Gonzales, J., concurring).

4. Justice Hecht, in his dissent in *Doe 3*, argued that abuse within the meaning of section 33.003(i) is the same as abuse defined in section 261.001 of the Family Code. *In re Jane*

*Doe 3*, 19 S.W.3d 300, 315 (Tex.2000) (Hecht, J., dissenting). Justice Owen also would apply that definition. *Id.* at 319 (Owen, J., dissenting). Justice Gonzales, joined by Chief Justice Phillips, concluded that emotional abuse "contemplates unreasonable conduct causing serious emotional injury." *Id.* at 304 (Gonzales, J., concurring).

essary for such a significant decision." *In re Jane Doe 2*, 19 S.W.3d at 283. Because a remand for the trial court to make fact findings is inconsistent with the expedited nature of these proceedings, it is essential that trial courts make fact findings with regard to each ground asserted for bypass. Accordingly, we renew our admonishments to the trial courts to heed the Legislature's mandate and issue fact findings and conclusions of law with regard to each ground asserted for a judicial bypass and to issue particularized findings at least when credibility or maturity issues are involved.

## IV.

We reverse the court of appeals' judgment and render judgment granting Doe's application for a judicial bypass.

Justice HECHT filed an opinion concurring in the judgment.

Justice HECHT, concurring in the judgment.

Nothing in any statute or rule governing parental notification proceedings prescribes that a minor's application to have an abortion without notice to either of her parents must be granted if the trial court issues a timely ruling but fails to make a finding on a ground asserted by the minor and supported by some evidence. The only relevant statutory provision states: "If the court fails to rule on the application *and* issue written findings of fact and conclusions of law within the [specified] period ..., the application is deemed to be grant-

ed...." [1] Plainly, an application is deemed granted by this provision only when the trial court fails *both* to rule *and* to make findings within the specified time. No statute prescribes the same result if the trial court's only failure is to make a timely finding. In all other civil proceedings, of course, findings can be made late, and omitted findings are presumed in favor of a trial court's rulings, not against them.[2] One might expect similar procedures in parental notification proceedings. But from the beginning this Court has steadfastly refused to follow rules applicable to civil cases generally or to take chapter 33 of the Family Code on its face if distorting one or the other would do more to keep children's abortions secret from their parents. So it is true, as the Court says today, that we have stated—probably merely in dicta, but we are way past quibbling over such niceties now—that if the trial court fails to make a finding on a ground asserted by a minor, and there is any evidence to support that ground, the application must be granted.[3]

I did not agree with this judicial rewriting of the statute,[4] but it is now quite clearly the law, and "in the area of statutory construction," as both this Court and the United States Supreme Court have recognized, "the doctrine of stare decisis has its greatest force."[5] This rule is not inflexible, of course; indeed, four of the JUSTICES who comprise today's majority refused to apply it only a few weeks ago in *Utts v. Short*.[6] But I agree that *stare decisis* is important here, and therefore I

---

1. TEX. FAM.CODE § 33.003(h) (emphasis added).

2. *See* TEX.R. CIV. P. 299.

3. *In re Doe 1(II)*, 19 S.W.3d 346, 357 (Tex. 2000).

4. *Id.* at 366, 379–381 (Hecht, J., dissenting).

5. *Marmon v. Mustang Aviation, Inc.,* 430 S.W.2d 182, 186 (Tex.1968) (citing *Moss v.*

*Gibbs,* 370 S.W.2d 452, 458 (Tex.1963), and *United States v. South Buffalo Ry.*, 333 U.S. 771, 774–775, 68 S.Ct. 868, 92 L.Ed. 1077 (1948)).

6. —— S.W.3d ——, ——, 2001 WL 1795019 (Tex.2002) (Baker, J., joined by Enoch, Hankinson, and O'Neill, JJ.) (arguing that the Court should overrule its decision in *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112 (Tex.1999),

agree with the Court that if there is any evidence in the record before us that the minor "may"—the operative word in section 33.003(i) [7]—be physically or emotionally abused if she discloses her desire to have an abortion to either of her parents, then the trial court's decision must be reversed.

There is some evidence that the minor's father may physically abuse her if she were to discuss the matter with him. According to her, he has been physically abusive to her siblings over far less serious matters. There is no evidence that her mother would be physically abusive. As to whether her mother might be emotionally abusive, the minor's scant testimony on the subject is somewhat equivocal. In its entirety, that testimony is as follows:

Q  And have you ever had a conversation with either of your parents regarding what would happen or what the consequences of your becoming pregnant would be?

A My father, no, because my father and I aren't very close. My mother, yes. We have had a conversation about what would happen if I were to come home pregnant, and that conversation basically went, if I were to—if I was ever pregnant, I might as well not come home. I'd have no place to stay. I'd have no freedom, no liberties. My car would be taken away. My cell phone would be taken away. I wouldn't have all the luxuries that I do now.

\* \* \*

Q  And based upon your earlier testimony, if you were to approach your mother to discuss your pregnancy and

your options, do you feel certain that she would ask you to leave the house?

A Yes. She probably wouldn't ask me to leave. She'd, like, tell me to leave, I'm pretty sure.

The minor's two answers are hard to square. On the one hand, she fears that her mother might keep her at home without a car, cell phone, or other "luxuries", and on the other she is concerned that her mother might expel her from home altogether. In any other kind of case I doubt a majority of the Court would say that evidence this weak can be credited towards a party's burden of proof. But again, this Court does not treat parental notification proceedings as other cases. I believe a fair reading of our precedents is that the testimony I have quoted, as ambiguous as it is, is enough for the minor's application to be granted in the absence of a finding by the trial court to the contrary. Accordingly, I agree with the Court's conclusion that because the trial court failed to discharge the responsibility that this Court—not the Legislature—has placed on it, the trial court's decision must be reversed.

Before ruling in this case, the trial court took a recess, in the judge's words, "to review some of the Supreme Court cases on this." I find it hard to understand how the trial court could have done much of a review and overlooked this Court's insistence on detailed findings on issues raised by the minor, especially issues related to her credibility which the trial court alone is in a position to judge. I can well understand a trial court's thinking that a statute—even a statute related to abortion—should mean what it says, but even a cur-

construing chapter 33 of the Texas Civil Practice and Remedies Code, because *Drilex* "is only slightly over two years old").

7.  TEX. FAM.CODE § 33.003(i) ("If the court finds that … notification may lead to physical, sexual, or emotional abuse of the minor, the

court shall enter an order authorizing the minor to consent to the performance of the abortion without notification to either of her parents or a managing conservator or guardian and shall execute the required forms.").

sory review of our cases should make plain that the law in parental notification proceedings is not to be found in chapter 33 of the Family Code but in this Court's revisions to that statute in its numerous *Doe* decisions. As we have construed chapter 33, a trial court does not discharge its responsibility in parental notification proceedings without making specific findings, especially on matters of credibility.[8] We have remanded cases in the past when trial courts could not have anticipated that requirement. There is no need to continue to do so.

It should be noted, however, that a trial court is not bound to grant a minor's application based solely on her fear that her parents would force her out of the home if they knew she was pregnant. If that were evidence enough, then virtually every application would be granted. In ten cases, we have yet to see one in which the minor did not say that she feared her parents would throw her out. Not all such fears are justified. In one case we know of, after remand from this Court, the minor decided to tell her mother after all, and no abuse resulted.[9] We must assume that most parents will do their best to support their children at least as much as the law requires.[10]

For these reasons I concur in the Court's judgment.

**8.** *See In re Doe 1,* 19 S.W.3d 249, 257 (Tex. 2000); *In re Doe 2,* 19 S.W.3d 278, 282 (Tex. 2000); *In re Doe 4,* 19 S.W.3d 322, 325 n. 1 (Tex.2000).

**9.** *In re Doe 4,* 19 S.W.3d 322, 327–328 (Tex. 2000) (Hecht, J., dissenting).

**10.** *See* TEX. FAM.CODE § 151.001(b) ("The duty of a parent to support his or her child exists while the child is an unemancipated minor and continues as long as the child is fully enrolled in an accredited secondary school in a program leading toward a high school diploma until the end of the school year in which the child graduates."); *see also id.* § 154.001(a) ("The court may order either or both parents to support a child in the manner specified by the order ... until the child is 18 years of age or until graduation from high school, whichever occurs later....").